**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                                 **Crim. No. 05-277 (ADC)**

[1] LASHAUN J. CASEY

      Defendant.

<u>OPINION AND ORDER</u>

I.    **Procedural History**

       In a superseding indictment filed in the instant case on February 14, 2007, Lashaun Casey ("defendant") was charged with the knowing, willful, intentional and unlawful taking of a motor vehicle by force and violence from a police officer with the intent to cause death or serious bodily harm, resulting in the death of the police officer, all in violation of 18 U.S.C. §2119(3). **ECF No. 104**. Defendant was also charged with the willful possession, brandishment, discharge, use and carrying of firearms in relation to a crime of violence in violation of 18 U.S.C. §924(j). *Id.* Finally, defendant was charged as a felon in knowing possession of a firearm in violation of 18 U.S.C. §922(g)(1). *Id.* On July 17, 2007, the United States filed its Notice of Intent to Seek the Death Penalty ("the Notice") under the Federal Death Penalty Act ("FDPA"), 18 U.S.C. §3591 *et seq.* **ECF No. 157.** Presently pending before the court are two motions regarding the use of a non-statutory future dangerousness aggravating factor[1] ("the

---

[1]  As alleged in the Notice, the factor is as follows:

    Future Dangerousness.  The Defendant is likely to commit criminal acts of violence in the future that would constitute a continuing and serious threat to the lives and safety of others, as evidenced by, at least one or more of the following:

        A. Continuing Pattern of Violence.  The Defendant has engaged in a continuing pattern of violence, attempted violence, and threatened violence, including, at least, the crimes alleged against the Defendant in the Indictment and the crimes of which the Defendant was previously convicted, as described in ¶B.3 of this Notice.

future dangerousness factor") during the penalty phase in the instant case.  *See* **ECF Nos. 540 & 543**.  In a hearing held on April 12, 2012, defendant presented the testimony of two expert witnesses, Dr. Mark Cunningham ("Dr. Cunningham") and Dr. John F. Edens ("Dr. Edens"), in support of his request to dismiss and strike this factor and to preclude its use during the penalty phase of the instant case.  **ECF No. 649**.  After the hearing, the Court ordered the United States to produce all records  of institutional misconduct by defendant while in custody, as well as defendant's previous criminal record.  **ECF No. 646**.  The United States complied with this request, filing defendant's criminal record and institutional record from the Metropolitan Detention Center in Guaynabo ("MDC").  **ECF No. 650**.

## II.    Challenge to the Future Dangerousness Factor

In his motions, defendant challenges the use of the future dangerousness factor based upon numerous grounds.  **ECF Nos. 540 & 543**.  The Court shall address each challenge in turn.

### A.    Vagueness, Ambiguousness and Undue Prejudice

Defendant first argues that the future dangerousness factor is unconstitutionally vague and ambiguous and that any probative value is outweighed by the danger of unfair prejudice.  **ECF No. 543**.

First, the Court notes that the Supreme Court has expressly approved use of a future dangerousness aggravating factor, affirming that such a factor is not impermissibly vague.

---

B. Low Rehabilitative Potential.  The Defendant has demonstrated a low potential for rehabilitation as evidenced by his repeated acts of institutional misconduct while in the custody of local correction or detention agencies, the United States Bureau of Prisons, or United States Marshal's Service.

C. Lack of Remorse.  The Defendant has demonstrated a lack of remorse for the capital offenses committed in this case, as indicated by the Defendant's statements following the offense alleged in Counts One and Two of the Indictment.

**ECF No. 157**.

*See Jurek v. Texas*, 428 U.S. 262, 274-76 (1976); *California v. Ramos*, 463 U.S. 992, 1002-03 (1983). Inasmuch as defendant also contends that the factor, as presented here, is unduly vague, the Court finds that it is not, as it splits the factor into three sub-parts which serve to notify defendant of the type of information which the United States shall use to undergird the proposition that defendant presents a risk of future dangerousness. Thus, the Court concludes that the future dangerousness factor is not impermissibly vague or ambiguous and **DENIES** defendant's request to dismiss and strike the factor based on these grounds.

Consequently, the Court turns to defendant's next challenge – that the relevance of any evidence relating to future dangerousness should be excluded as unfairly prejudicial. During the penalty phase of a capital trial, the FDPA, 18 U.S.C. §3593(c), excludes relevant evidence whose probative value is outweighed[2] by the danger of unfair prejudice, confusion of the issues or misleading the jury. 18 U.S.C. §3593(c). First, the Court finds little weight in defendant's generic complaints of prejudice stemming from the presentation of this unsympathetic evidence. Undue prejudice does not exist simply because the contested evidence increases the likelihood that a defendant will receive a sentence of death. *See United States v. Pinillos-Prieto*, 419 F.3d 61, 72 (1st Cir. 2005) ("Virtually all evidence is prejudicial – if the truth be told, that is almost always why the proponent seeks to introduce it – but it is only the *unfair* prejudice against which the law protects"); *United States v. Walker*, 910 F. Supp. 837, 853 (N.D.N.Y. 1995) (noting that aggravating factors are designed to increase the likelihood that a defendant will receive a sentence of death).

Next, the Court rejects defendant's assertions that all evidence relating to future dangerousness must be unduly prejudicial because of an alleged lack of reliability in the opinions of experts and juries regarding defendants' potential for future dangerous behavior and based upon the unlikelihood of violence while incarcerated. While the Court

---

[2] This standard differs from Federal Rule of Evidence 403, which excludes otherwise relevant evidence where its probative value is substantially outweighed by the danger of unfair prejudice or misleading the jury. *See* Fed.R.Civ.P. 403.

acknowledges the power and logic of the supporting testimony presented by Drs. Cunningham and Eden, the Court finds that, even if it were not bound by Supreme Court precedent approving use of a future dangerousness factor[3] and expert testimony[4] in support thereof,[5] this overarching theory carries little weight in light of the facts of the instant case, where the United States has produced institutional records which demonstrate defendant's rebellious and violent nature while incarcerated.[6]  *See* **ECF No. 650**.     Among the impermissible acts which defendant has committed since his incarceration are numerous instances of refusal to comply with corrections officers' orders, several instances of attempted suicide and an instance where defendant assaulted a corrections officer.  *Id.*  Accordingly, the Court finds  that evidence relating to defendant's potential for future violence, even where

---

[3]  *Jurek*, 428 U.S. at 274-76.

[4]  *Barefoot v. Estelle*, 463 U.S. 880, 896-99 (1983).

[5]  Indeed, the Court was impressed by the statistical data presented by Dr. Cunningham summarizing the outcome of studies regarding the reliability of jurors' and experts' predictions of future violence in a prison setting, particularly the high error rate relating to homicides and major assaults.  *See* **ECF No. 647** at Exhibit 3. However, this Court is bound by the precedent of higher courts, particularly the United States Supreme Court. Thus, while the Court urges these higher courts to re-think their precedent approving use of the future dangerousness aggravating factor and finding constitutional propriety in the use of a jury to make a prediction regarding potential for future violence, the Court also understands that to disallow use of the factor in the instant case based upon a fundamental underpinning of the higher court's previous decision would fly in the face of established precedent.  *See e.g. Agostini v. Felton*, 521 U.S. 203, 238 (1997) (enunciating the rule that, where the Supreme Court has ruled on an issue, the lower courts must reach the same result until the Supreme Court overrules or redefines that precedent).

[6]  While the Court addresses defendant's potential for future violence in the context of a lifetime in prison, for purposes of this Opinion and Order, it is cognizant that at least one other circuit has found that the inquiry into dangerousness should include not only prison officials and other inmates, but also members of society in general.  *See United States v. Allen*, 247 F.3d 741, 788 (8th Cir. 2001); *but cf. United States v. Basciano*, 763 F.Supp. 2d 303, 352 (E.D.N.Y. 2011) (citing *United States v. Llera Plaza*, 179 F.Supp. 2d 464, 487-88 (E.D.Pa. 2001) and *United States v. Cooper*, 91 F.Supp. 2d 90, 111-12 (D.D.C. 2000) for the proposition that the future dangerousness inquiry should be considered in the context of a prison setting).  However, as even limiting the scope of the inquiry does not herald a victory for defendant here, the Court, acting out of an abundance of caution, herein addresses the future violence inquiry in the context of imprisonment.

incarcerated, is highly relevant in the instant case and that the risk of undue prejudice is slight in comparison. Consequently, the Court **DENIES** defendant's request to exclude all evidence relating to future dangerousness based upon 18 U.S.C. §3593(c).

> **B.      Duplicative of Other Factors**

Defendant also argues that the continuing pattern of violence sub-part of the factor constitutes impermissible double-counting and duplication of the previous conviction of a violent felony involving firearm factor.[7]  *Id.*  Along a similar, but somewhat contradictory, vein, defendant argues that the sub-parts of the future dangerousness factor should be alleged as stand-alone factors.  *Id.*

The Supreme Court has yet to hold that duplicative aggravating factors are unconstitutional.  *See Jones v. United States*, 527 U.S. 373, 398 (1999) (noting that the Supreme Court has yet to pass on what it terms the "double counting theory").  However, many courts[8] which have addressed the issue have found that aggravating factors which "necessarily subsume" one another are impermissibly duplicative.  *See United States v. McCullah*, 76 F.3d 1087, 1112 (10th Cir. 1996)(holding that "the use of duplicative aggravating factors creates an unconstitutional skewing of the weighing process"); *see also Fields v. Gibson*, 277 F.3d 1203,

---

[7]  Inasmuch as defendant makes a vague reference to other "alleged aggravating factors" in relation to this argument, asserting that the continuing pattern of violence sub-part also impermissibly duplicates them, the argument is waived as fatally underdeveloped.  *See United States v. Zannino*, 895 F.2d 1, 18 (1st Cir. 1990). Likewise, the Court does not address herein defendant's subsequent argument regarding the correct standard of proof for the penalty phase of a capital proceeding as defendant fails to cite a single source in relation to this argument.  *See id.*

[8]  A circuit split exists as to whether duplicative aggravating factors are unconstitutional.  *See e.g. United States v. Fell*, 531 F.3d 197, 235-36 (2d Cir. 2008)(acknowledging the split between the Eighth and Fifth Circuits on one hand and the Tenth Circuit and those who follow it on the other hand). The First Circuit Court of Appeals has not yet indicated whether it intends to apply the subsuming test to determine the validity of allegedly duplicative factors or whether it intends to follow the circuits that do not prohibit duplicative aggravating factors.  Acting out of an abundance of caution, the court shall apply the subsuming test in the instant case as at least one other district court within this circuit has previously done so.  *See United States v. Sampson* ("*Sampson I*"), 275 F.Supp. 2d 49, 107 (D.Mass. 2003).

1218-19 (10th Cir. 2002)(noting that the test for whether a factor is impermissibly duplicative is whether "one aggravating circumstance necessarily subsumes the other(s)"); *United States v. Fell*, 531 F.3d 197, 235-36 (2d Cir. 2008); *United States v. Mayhew*, 380 F.Supp. 2d 936, 947(S.D. Ohio 2005); *United States v. Karake*, 370 F.Supp. 2d 275, 278 (D.D.C. 2005). One aggravating factor impermissibly subsumes another where "a jury would 'necessarily have to find one [factor] in order to find the other.'" *Fell*, 531 F.3d at 236 (quoting *Johnson v. Gibson*, 169 F.3d 1239, 1289 (10th Cir. 1999)).

Utilizing this standard, the court first addresses defendant's assertion that the continuing pattern of violence sub-part of the future dangerousness aggravating factor impermissibly duplicates the previous conviction aggravating factor. It is true that both factors reference  defendant's previous conviction of a violent felony involving a firearm. However, it is not sufficient that two aggravating factors utilize the same evidence of a prior conviction; one factor must actually subsume the other. *See Fields*, 277 F.3d at 1219. The previous conviction factor is supported solely with evidence of defendant's past bad acts, whereas the continuing pattern of violence sub-part is supported by evidence of defendant's potential for future bad acts, which, in turn, is based upon inferences drawn from the same conviction. *See id.* (ruling that a "prior violent felony" aggravating factor and a "continuing threat to society factor" are not impermissibly duplicative). Thus, the jury's task in evaluating the evidence of the prior conviction for each factor is different. For one, the jury must review the evidence in order to determine defendant's prior criminal history and, for the other, the jury must look to evidence which includes, but is not limited to, defendant's prior criminal history in order to determine his likelihood of future violence. *See id; see also United States v. Umana*, 707 F. Supp.  2d 621, 638 (W.D.N.C. 2010) (finding that factors which necessitate the consideration of past involvement in a criminal enterprise and future dangerousness based in part upon that involvement are not impermissible). Thus, the Court finds that, while both factors draw from evidence relating to the same conviction, neither factor wholly subsumes

the other because they focus on different harms.  *See United States v. Wilson*, 493 F. Supp.  2d 364, 391 (E.D.N.Y. 2006).  Accordingly, defendant's motion to dismiss or strike the continuing pattern of violence sub-part of the future dangerousness aggravating factor based upon impermissible duplication of another factor is **DENIED**.

Furthermore, defendant has failed to cite a single authority for the proposition that each sub-part of the future dangerousness factor should be included as a separate factor.  *See* **ECF No. 543**.  In contrast, the United States has cited two cases to support the proposition that the future dangerousness aggravating factor may, and should, be used as an "umbrella" factor encompassing related sub-parts.  *See United States v. Mayhew*, 380 F.Supp.2d 936, 951 (S.D.Ohio 2005); *United States v. Davis*, 912 F.Supp. 938, 946 (E.D.La. 1996) (finding that lack of remorse should be included as a sub-part of future dangerousness factor).  Accordingly, the Court **DENIES** defendant's request to require the United States to include each sub-part as an individual factor.

### C.      Failure to Include Factor in Indictment and Lack of Congressional Intent

Next, defendant asserts that the United States' failure to include the future dangerousness factor in the superseding indictment violates his presumption of innocence and must be stricken.[9] **ECF No. 543**.  Defendant further argues that, because Congress did not include future dangerousness among the factors listed in the body of the FDPA, Congress did not intend for the factor to be used to support imposition of the death penalty. *Id.*

The argument regarding Congressional intent is meritless as the FDPA explicitly provides that a jury may consider the listed statutory aggravating factors or "any other aggravating factor for which notice has been given."  18 U.S.C. §3592; *see also United States v. Barnes*, 532 F.Supp.2d 625, 643 (S.D.N.Y. 2008) (reaching an identical conclusion).  Thus, the

---

[9]  Defendant also presents an argument in the alternative, asserting that, if the Court does not strike or dismiss the future dangerousness aggravating factor, he is entitled to know what evidence the United States intends to use against him in support of the factor.  **ECF No. 543**.  However, no such right exists.  *E.g. Grey v. Netherland*, 518 U.S. 152, 166-70 (1996) (finding in the context of a capital sentencing proceeding, a criminal defendant has no due process right to prior disclosure of the evidence which the United States plans to present).

plain language of the statute itself authorizes the consideration of non-statutory factors not explicitly enumerated in the FDPA. *See  United States v. O'Reilly*, 545 F.Supp. 2d 630, 637-38 (E.D.Mich. 2008).  Further, courts of appeals which have considered the issue have determined that there is no requirement that the United States include  non-statutory aggravating factors, such as the future dangerousness factor, in the indictment. *United States v. LeCroy*, 441 F.3d 914 (11th Cir. 2006). These courts have determined that, in order to protect the defendant's Fifth and Sixth Amendment rights, only one of the aggravating factors must be present in the indictment. *See LeCroy*, 441 F.3d at 922-23; *United States v. Bourgeois*, 423 F.3d 501, 507 (5th Cir. 2005); *United States v. Higgs*, 353 F.3d 281, 298-99 (4th Cir. 2003).[10]   Although the future dangerousness aggravating factor was only included in the Notice and not in the superseding indictment,[11] three other aggravating factors[11] were listed in the superseding indictment. *See* **ECF No. 107**.   Accordingly, defendant's request to dismiss and strike based upon these arguments  is **DENIED**.

### D.    Relevance of Lack of Remorse

Next, defendant argues that the lack of remorse sub-part is irrelevant and impermissible.[12]  **ECF No. 543**. However, this argument disregards the Supreme Court's

---

[10]  The First Circuit Court of Appeals has not ruled directly upon this issue.  However, in a related opinion, the First Circuit noted that "the mental culpability and aggravating factors required by the FDPA must . . . be presented to a grand jury, charged in the indictment, and proved beyond a reasonable doubt." *United States v. Sampson* ("*Sampson III*"), 486 F.3d 13, 21 (1st Cir. 2007).  The Court understands that this statement is in line with the cases cited by the Court which establish that, procedurally, under the FDPA, in light of Supreme Court precedent, the United States must include at least one aggravating factor in the indictment before the Grand Jury to support the invocation of the death penalty, and that the United States may elect to include further aggravating factors.

[11]  These aggravating factors were: the previous conviction factor; the pecuniary gain factor; and the substantial planning aggravating factor, which was subsequently abandoned by the United States. *See* **ECF No. 107**.

[12]  Defendant also argues that lack of remorse must be judged at the present time, rather than by reference to any point in the past.  **ECF No. 543**.  However, the sole case upon which defendant relies, *United*

opinion in *Zant v. Stephens*, 462 U.S. 862, 885 n.22 (1983), wherein the Court explicitly listed information regarding "lack of remorse" as a type of evidence admissible in relation to the aggravating factors.  Further, sister courts which have ruled on the permissibility of lack of remorse as an aggravating factor or as a sub-part to the future dangerousness aggravating factor  have consistently found that it is not *per se* unconstitutional and is indeed allowed under the FDPA.  *See United States v. Catalán-Román*, 371 F.Supp. 2d 36, 50 (D.P.R. 2005) (finding that there is no constitutional ban on the factor and that its use is permissible under the FDPA); *O'Reilly*, 545 F.Supp. 2d at 637-38 (allowing lack of remorse evidence in relation to the future dangerousness factor); *United States v. O'Driscoll*, 203 F.Supp. 2d 334, 345 (M.D.Pa. 2002) (denying request to strike a future dangerousness factor which contained an allegation of lack of remorse); *United States v. Cooper*, 91 F.Supp. 2d 90, 112 (D.D.C. 2000) (allowing lack of remorse as a sub-part of future dangerousness, but not as a stand-alone aggravating factor); *United States v. Davis*, 912 F.Supp. 938, 946 (E.D.La. 1996); *United States v. Nguyen*, 928 F.Supp. 1525, 1541 (D.Kan. 1996).  However, this finding does not come without limitations: the United States may not implicate defendant's right to remain silent; further, the United States must adduce evidence which shows a pervasive and continuous lack of remorse.  *See Catalán-Román*, 371 F.Supp. 2d at 50.

Consequently, the Court finds no legal basis for defendant's assertion that lack of remorse is irrelevant to the future dangerousness inquiry and **DENIES** defendant's request to strike or dismiss based upon this argument.

### E.     Relevance of Low Rehabilitative Potential Sub-Part

Defendant also attacks the low rehabilitative potential sub-part, arguing that this portion of the factor is vague and irrelevant as defendant faces life in prison if he does not receive the death penalty.  **ECF No. 543**. However, the Court shall follow its sister courts

---

*States v. Sampson* ("*Sampson II*"), 335 F.Supp. 2d 166 (D.Mass. 2004), does not stand directly for this proposition as the relevant portion  solely relates to mitigating factors.

which have found that low rehabilitative potential is indeed a proper sub-part of a future dangerousness aggravating factor. *See e.g. Basciano*, 763 F.Supp. 2d at 352 (finding that, even where the court should apply the future dangerousness factor in the context of life in prison, low rehabilitative potential is still a valid consideration); *United States v. Bin Laden*, 126 F.Supp. 2d 290, 303-04 (S.D.N.Y. 2001) ("[L]ower courts have uniformly upheld future dangerousness as a non-statutory aggravating factor in capital cases under the FDPA, including instances where such factor is supported by evidence of low rehabilitative potential and lack of remorse.") Inasmuch as defendant contests application of the low rehabilitative sub-part to him, the reference in the Notice to defendant's continued failure to obey corrections officers while detained and statements made after his arrest is sufficient to notify defendant of the information which the United States intends to use. Accordingly, the Court **DENIES** defendant's request to dismiss or strike based upon this argument.

F.    **Statistical Information Relating to Future Danger**

Finally, defendant argues that, based on statistical information, all capital defendants allegedly present a future danger and, thus, the factor does not properly narrow the category of these defendants to whom the death penalty is actually applied. **ECF No. 543**. In support of this proposition, defendant cites the statistics contained within a single case, *United States v. Taveras*, 424 F.Supp. 2d 446, 454 (E.D.N.Y. 2006). **ECF No. 543**. These statistics[13] show that, between 1994 and 2004, future dangerousness was alleged as an aggravating factor in "more than three-quarters" of capital cases and that it is found in approximately one-third of the cases in which it is alleged. 424 F.Supp. 2d at 454.

---

[13]    Although *Taveras* dealt with application of aggravating factors under the Anti-Drug Abuse Act ("ADAA"), 21 U.S.C. §848, rather than the FDPA, the Court understands that the statistics, like subsequent statistics from the Federal Death Penalty Resource Counsel, relate to prosecutions under both federal death penalty statutes. *See* www.capdefnet.org, last accessed June 19, 2012. The Court cannot verify the underlying statistical information cited by the *Taveras* court in parentheticals as it appears that, in the intervening five years, the statistics on the Federal Death Penalty Resource Counsel's webpage have been updated and otherwise altered.

During the penalty phase of a capital case, the United States is not limited to the presentation of aggravating factors laid out by the applicable death penalty statute. *Zant v. Stephens*, 462 U.S. 862, 878 (1983)(noting the constitutional purpose of statutory aggravating factors, but recognizing that a jury may also consider other, non-statutory factors in imposing a sentence of death). However, a non-statutory aggravating factor must not apply to all defendants convicted of the underlying crime, but, rather, must narrow the class of defendants upon whom a sentence of death may be imposed. *Tuilaepa v. California*, 512 U.S. 967, 972 (1994). An aggravating factor is unconstitutionally overbroad where "the sentencing jury 'fairly could conclude that an aggravating circumstance applies to *every* defendant eligible for the death penalty.'" *Jones*, 527 U.S. at 401 (quoting *Arave v. Creech*, 507 U.S. 463, 474 (1993)(emphasis in original)).

Defendant's understanding of the requirement that aggravating factors narrow the class of death penalty eligible defendants is fundamentally flawed. The Supreme Court has only deemed unconstitutional factors which are so broad as to encompass all defendants against whom the death penalty is sought. *See Jones*, 527 U.S. 401. The statistics cited by defendant merely establish that the United States alleges a future dangerousness aggravating factor in only approximately three-quarters of eligible cases. *See Taveras*, 424 F.Supp. 2d at 454. Three-quarters, and even "more than three-quarters" is, quite simply, not all. *See United States v. Barnes*, 532 F.Supp. 2d 625 (S.D.N.Y. 2008) (rejecting a narrowness challenge to a future dangerousness aggravating factor based upon a nearly-identical argument). Consequently, the Court **DENIES** defendant's request to dismiss or strike based upon this argument as well.

### III.    Conclusion

For the reasons stated above, defendant's motions to dismiss, strike and preclude use of the future dangerousness aggravating factor (**ECF Nos. 540 & 543**) are hereby **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, on this 20th day of December, 2012.

**S/AIDA M. DELGADO-COLÓN**
**Chief United States District Judge**