# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

LESHAUN CASEY

    Petitioner,

    v.

UNITED STATES OF AMERICA,

    Respondent.

**Civil No. 18-1049 (ADC)**
**[Related to Crim. No. 05-277-1 (ADC)]**

## OPINION AND ORDER

Lashaun Casey (Casey") moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. **ECF No. 1**. The government responded. **ECF No. 6.** Petitioner replied. **ECF No. 10.** For the reasons set forth below, petitioner's §2255 motion is **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

In 2005, the Puerto Rico Police Department ("PRPD") assigned Agent Jesús Lizardi-Espada ("Lizardi") to investigate Casey in an undercover role. On August 1, 2005, Lizardi arranged to take a ferry to Culebra with Casey to purchase four pounds of marijuana from drug supplier Alexander Hernández ("Alexander"). A PRPD team travelled to Culebra by plane to await Lizardi and Casey's arrival. Lizardi and Casey, however, did not arrive on the ferry as planned and a search for the pair ensued. Later that day, agent José Agosto-Rivera ("Agosto")

---

[1] As Casey does not claim that any newly discovered evidence is implicated in his § 2255 motion, the facts in this section are summarized from the First Circuit's opinion following Casey's direct appeal. *Casey v. United States*, 825 F.3d 1 (1st Cir. 2016).

found Casey at his workplace, a Holiday Inn hotel, and recognized Lizardi's grey Ford pickup truck in the hotel parking lot. After agents witnessed Casey leave the hotel in Lizardi's truck, Casey was arrested and taken to PRPD general headquarters where he was read his rights, signed a *Miranda* waiver, and began being questioned at about 12:50 a.m. on August 2nd by PRPD agent Diana Marrero ("Marrero"). Over the next few hours, Casey indicated his willingness to help officers in their search for Lizardi, leading officers to the homes of individuals in the drug trafficking world.  These leads, however, produced no results.

At about 6:00 a.m. on August 2nd, Casey was brought to another PRPD station in Canóvanas, where the FBI assumed jurisdiction.  At this point, Casey indicated to agent Marrero that he no longer wished to speak with law enforcement and asked to see his grandfather. Casey's grandfather, with whom Casey lived, arrived at the station and gave consent for the agents to search Casey's bedroom at their home. Shortly after 12:00 p.m. on August 2nd, FBI agents transported Casey to its premises in Ceiba. Upon arrival, FBI agent Luis Moulier ("Moulier") read Casey his *Miranda* rights again and he exercised his right to remain silent.

No further questioning ensued until around 2:00 p.m. when agent Marrero approached Casey without repeating his *Miranda* rights and confronted him with the evidence that was found in his bedroom.[2]  Casey responded with the statements: "maybe he is alive, maybe he is dead" and that he was "sunk with the evidence." Agent Marrero then pressed for Casey to reveal more details but he refused and, at some point in the exchange, Casey asserted his right to an

---

[2] The search of Casey's room yielded a loaded firearm, Lizardi's cell phone, and a pair of blood-stained flip flops.

attorney. Around 4:00 p.m., agents allowed Casey's wife into the interview room to speak with him while a PRPD agent remained in close proximity. The agent overheard Casey make statements including "killing a cop is a federal case," and "they seized a lot of evidence at the house but they don't have the body, anyway, he was an undercover cop and he knew he was on his way to do a drug deal with me and could come out dead or alive." Casey made his initial appearance before a U.S. Magistrate Judge on August 3, 2005. A few days later, following further investigation, Lizardi's deceased body was found in a wooded area behind an abandoned structure in Luquillo with two gunshot wounds in his head.

In February 2007, a grand jury indicted Casey on three counts: (1) carjacking with the intent to cause death or serious bodily injury under 18 U.S.C. § 2119(3); (2) possession, use, discharge carrying of firearms during a crime of violence resulting in another's death under 18 U.S.C. § 924(j); and (3) being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). In July 2007, the government filed its notice to seek the death penalty and pretrial proceedings took place over the next six years. In 2011, Casey moved to suppress all statements elicited from him while in police custody as well as the contents of the overheard conversation he had with his wife allegedly in violation of his *Miranda* rights. Casey's counsel, however, did not address the so-called *Mosley* concern that arose during his time in custody as Casey initially invoked his right to remain silent while in custody at Canóvanas and that right was not "scrupulously honored" while he was in custody at Ceiba. *See Michigan v. Mosley*, 423 U.S. at 104.

In 2013, this Court denied his motion apart from certain statements he made after invoking his *Miranda* protections in the 2:00 p.m. encounter at Ceiba.[3] *See United States v. Casey*, No. 3:05-cr-00277-ADC-1, ECF No. 793 (D.P.R. Jan. 23, 2013) (Delgado, J., Opinion and Order). Later, on the eve of trial, the government designated two DNA reports authored by Carna Meyer and a third authored by Brendan Shea. The government then called Meyer to testify to introduce all three reports. Casey's trial counsel made no objection to the reports nor did he object to Meyer's endorsement of Shea's report despite her lack of involvement in the report's preparation.

Following a nine-day trial, a jury convicted Casey of all counts but rejected the death penalty. **Crim. No. 05-277-1, ECF No. 965**. On June 13, 2013, Casey was sentenced to life in prison. **Crim. No. 05-277-1, ECF No. 1093**. Casey then filed a timely direct appeal in the First Circuit challenging a wide array of the district court's decisions made before and during his trial. **Crim. No. 05-277-1, ECF No. 1096**. On June 3, 2016, the court of appeals affirmed his conviction. *Casey v. United States*, 825 F.3d 1 (1st Cir. 2016). On January 23, 2017, the Supreme Court denied certiorari. *See id.*, *cert. denied*, 137 S. Ct. 839 (Jan. 23, 2017). The parties do not dispute that Casey's § 2255 petition was timely filed.

II.   **STANDARD OF REVIEW**

"Section 2255 is not a surrogate for a direct appeal." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). "Rather, the statute provides for post-conviction relief in four instances,

---

[3] This Court's opinion and order refers to Casey's statement "I don't know what you're talking about," which he made after he invoked his right to an attorney.

namely, if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was

imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was

otherwise subject to collateral attack." *Id.* The "catch-all" fourth category includes only errors that

reveal "fundamental defects" which, if uncorrected, will "result in a complete miscarriage of

justice." *Id.* (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). Accordingly, the burden is on

the petitioner to make out a case for § 2255 relief because his claim "must reveal exceptional

circumstances that make the need for redress evident." *Id.* To this end, we may deny Casey's

petition without an evidentiary hearing if the "motion and the files and records of the case do

not conclusively show that [he] is entitled to relief." *United States v. Giardino*, 797 F.2d 30, 32 (1st

Cir. 1986) (internal citation and quotations omitted).

The Sixth Amendment's guarantee of the right to counsel "is the right to effective

assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To succeed on an

ineffective assistance of counsel claim, a defendant must demonstrate both: (1) "that his counsel's

performance was deficient," and (2) "that the deficient performance prejudiced the defense."

*Rossetti v. United States*, 773 F.3d 322, 327 (1st Cir. 2014) (quoting *Strickland v. Washington*, 466

U.S. at 687). Under the first prong, "we indulge a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance, finding deficiency only 'where,

given the facts known to counsel at the time, counsel's choice was so patently unreasonable that

no competent attorney would have made it.'" *Rosetti*, 773 F.3d at 327 (quoting *Knight v. Spencer*,

447 F.3d 6, 15 (1st Cir. 2006)).  Under the prejudice prong, a defendant must demonstrate "a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 694).

### III.   ANALYSIS

Casey brings a host of ineffective assistance of counsel claims.[4] His petition challenges his counsel's conduct before and during trial on three main grounds: (1) that his counsel failed to object to the testimony of a surrogate witness who testified to introduce three DNA reports; (2) that his counsel failed to argue, under *Michigan v. Mosley*, 423 U.S. 96, 104 (1975), that certain statements he made while in police custody should be suppressed; and (3) that his counsel failed to argue that all statements he made while in police custody should have been suppressed as they were obtained in violation of the prompt presentment rule. **ECF No. 1**.

   *A.  Surrogate Witness Testimony*

Casey claims that he received ineffective assistance because counsel failed to object to the introduction of forensic evidence reports through Carna Meyer, a purported "surrogate witness." It is well-established that a forensic laboratory report, created specifically to serve as evidence in a criminal proceeding, is "testimonial" for Confrontation Clause purposes. *See Meléndez-Díaz v. Massachusetts*, 557 U.S. 305, 310 (2009). "Absent stipulation . . . the prosecution may not introduce such a report without offering a live witness competent to testify to the truth of the report's statements." *Bullcoming v. New Mexico*, 564 U.S. 647, 651 (2011). In *Bullcoming*, the Court found

---

[4] It is well-established that a defendant can assert ineffective assistance of counsel claims for the first time in a collateral motion made under § 2255. *Massaro v. United States*, 538 U.S. 500, 504-05 (2003); *Rossetti v. United States*, 773 F.3d 322, 326 n.2 (1st Cir. 2014).

that the scientist who certifies a forensic report is the only witness "competent" to testify as to

the veracity of that report.  *Id.* at 661 (finding that analysts who write reports must be available

for confrontation). The Court went on to state that, like other rules of evidence, a forensic report

prepared by one witness can only be entered into evidence through the in-court testimony of a

second witness "who did not sign the certification or perform or observe the test reported in the

certification" if the witness who prepared the report is unavailable. *Id.* at 657. Moreover, a

Confrontation Clause violation of this nature can be deemed harmless if the "uncertified" report

being introduced is merely "cumulative" and "the properly admitted evidence against [the

defendant] is overwhelming." *See Barbosa v. Mitchell*, 812 F.3d 62, 68 (1st Cir. 2016) (finding no

error where surrogate witness based her opinion on DNA testing she did not perform because

report was cumulative and defendant had fair opportunity to confront surrogate as to basis of

her opinion).

Casey contends that the government's use of Meyer as the live witness to introduce Shea's

report violates the Supreme Court's rule espoused in *Bullcoming* and violates the Confrontation

Clause. Accordingly, his counsel's failure to object to the introduction of this report was

constitutionally deficient and fell outside the wide "range of reasonable professional assistance."

*Knight*, 447 F.3d at 15 (quoting *Strickland*, 466 U.S. at 689). However, even if we assume that

counsel's failure to object "was so patently unreasonable that no competent attorney would have

made" such an error, Casey has not demonstrated how he was prejudiced by this deficiency. *Id.*

That is, he has not demonstrated, with any reasonable probability, that the disqualification of

Shea's report would have altered the result of his trial. *Knight*, 447 F.3d at 15.

The record shows that the prosecution introduced three DNA reports through Meyer:

two of which she authored and the third authored by Shea. **Crim. No. 05-277-1, ECF No. 860**. As

the government correctly notes, Meyer testified that she reviewed the underlying data and

conducted the same statistical analysis as Shea to produce her own reports. *Id.* Her testimony,

including her expert opinion regarding the results of Shea's report, was subject to vigorous cross-

examination by Casey's counsel. *Id.* Thus, the introduction of Shea's report was merely

cumulative to the DNA evidence introduced at trial and had no "substantial and injurious effect

on the verdict." *Barbosa*, 812 F.3d at 69.

This Court is not persuaded that counsel's failure to object to the introduction of this

particular forensic report constituted an error "so serious as to deprive" Casey of a fair trial or

result in a "complete miscarriage of justice." *Strickland*, 466 U.S. at 687; *David*, 134 F.3d at 474.

Consequently, Casey's ineffective assistance claims on this front fail.

   *B.  Statements Admitted in Violation of Mosley*

Next, Casey claims that certain statements he made while in police custody were adduced

from questioning that occurred after he invoked his *Miranda* rights. It follows, according to

Casey, that his counsel's performance was constitutionally deficient by failing to argue in favor

of suppressing these statements under *Michigan v. Mosley*, 423 U.S. 96 (1975). "Where an

ineffectiveness claim is based on counsel's decision not to file a suppression motion, the

petitioner must demonstrate that a meritorious claim formed the basis of the proposed motion in order to establish deficient performance." *Johnston v. Mitchell*, 871 F.3d 52, 60 (1st Cir. 2017) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 374 (1993) (O'Connor, J., concurring)). Accordingly, we turn our attention to the merits of Casey's *Mosley* claim.

In *Mosley*, the Supreme Court found that "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" *Id.* at 104 (quoting *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)). In analyzing whether it was proper for police to resume questioning, the *Miranda* right being invoked by the defendant is noteworthy. *See United States v. Oquendo-Rivas*, 750 F.3d 12, 17-18 (1st Cir. 2014). If the defendant invokes his right to counsel, "questioning must invariably cease until a lawyer is provided." *Id.* at 17. Conversely, if the defendant invokes his right to remain silent, the police are not automatically barred from resuming questioning at a later time. *Id.* Rather, a court will balance four factors to determine whether the right to remain silent was "scrupulously honored" under *Mosley*: (1) whether a reasonable period of time passed prior to the resumption, (2) whether the same officer resumed questioning, (3) whether the suspect received refreshed *Miranda* warnings, and (4) whether questioning concerned the same alleged crime. *Oquendo-Rivas*, 750 F.3d at 17-18. Our "ultimate review," however, must account for the totality of the circumstances "with an eye on determining whether the suspect retained the ability to choose whether and when to speak." *Id.* at 18.

In his petition, Casey does not distinguish which specific statements he is referring to or whether he invoked his right to an attorney or to remain silent under *Miranda*. The record, however, shows that he invoked his right to remain silent around 12:00 p.m. upon arriving at Ceiba, and after he received refreshed *Miranda* warnings from agent Moulier.[5] *Casey*, 825 F.3d at 19. Around 2:00 p.m., agent Marrero began questioning Casey without repeating his *Miranda* rights. *Id.* At some point during this questioning, Casey asserted his right to an attorney. *Id.* at 20. While subsequent questioning produced some statements after the invocation of this right, this Court suppressed those statements before trial. *See United States v. Casey*, No. 3:05-cr-00277-ADC-1, ECF No. 793, at 16 (D.P.R. Jan. 23, 2013) (Delgado, J., Opinion and Order). Thus, presumably at issue here are the statements Casey made to agent Marrero prior to invoking his right to an attorney—that he was going down with the evidence and that "maybe [Lizardi] is alive, maybe he is dead." **Crim. No. 05-277-1, ECF No. 739** at 41; *see also Casey*, 825 F.3d at 20.

Under the first factor, the reasonableness of the time between the two rounds of questioning, the record shows that approximately two hours passed from the time Casey initially invoked his right to remain silent to when agent Marrero resumed questioning. While it is "unwise and unworkable . . . to try to demarcate a one-time-fits-all limit for assessing reasonableness," *Oquendo-Rivas*, 750 F.3d at 18, the Court in *Mosley* found the passage of "more than two hours" to be reasonable. *Mosley*, 423 U.S. at 104; *Andrade*, 135 F.3d at 106 (finding two

---

[5] In his reply to the government's opposition, Casey refutes this fact and claims that he invoked his right to an attorney upon being Mirandized by agent Moulier. **ECF No. 10** at 4-5. He provides no support for this assertion and the record plainly contradicts his current position.

hours to be reasonable interval); *Contra United States v. Barone*, 968 F.2d 1378, 1383 (1st Cir. 1992) (finding that statement obtained after "momentary cessation" in interrogation must be suppressed); *Oquendo-Rivas*, 750 F.3d at 18 (suggesting that twenty minutes may be unreasonable period between rounds of questioning). Even if we assume that this nearly two-hour lapse in questioning was reasonable, this factor is not dispositive and may be offset by other circumstances. *Barone*, 968 F.2d at 1385; *see also Oquendo-Rivas*, 750 F.3d at 18 (finding that defendant's rights were scrupulously honored despite twenty-minute lapse in questioning).

Under the totality of the circumstances, a review of the second, third, and fourth factors against the two-hour time lapse compels us to conclude that Casey's *Mosley* claim was highly likely to fail. With respect to the second factor, Casey received a fresh round of *Miranda* rights at Ceiba from agent Moulier and was questioned later on by agent Marrero. Our analysis, however, cannot be constrained to this two-hour interval. After all, this was not Casey's first interaction with agent Marrero while in custody.

Notably, upon Casey's arrest on August 1, agent Marrero presented Casey with a form acknowledging that he had been informed of his *Miranda* rights. *Casey*, 825 F.3d at 19. The parties do not dispute that Casey voluntarily signed the form, knowingly waived his rights, and indicated his willingness to speak to agent Marrero about Lizardi's whereabouts. *Id.* Casey was later transferred to Canóvanas, where he indicated to agent Marrero that he no longer wished to speak with law enforcement shortly after 6:00 a.m. on August 2. *Id.* Agent Marrero did not pursue further questioning at Canóvanas. *Id.*

The record is devoid of any evidence suggesting that agent Marrero, or any other officer, engaged in coercive tactics from the time of Casey's arrest to the time the relevant statements were made. *Compare Barone*, 968 F.2d at 1384 (suppressing statements where police threatened defendant with physical danger to "pressure" him into changing his mind about remaining silent), *with Andrade*, 135 F.3d at 107 (admitting statements where there was no "repeated attempt to reverse" defendant's refusal to talk through "undue pressure"). In fact, agent Marrero scrupulously honored Casey's right to remain silent when he invoked it shortly after 6:00 a.m. at Canóvanas and she did not resume questioning until 2:00 p.m. at Ceiba. The only other interaction during this interval occurred when Casey received a fresh round of *Miranda* warnings upon arriving at Ceiba. *See Westover v. United States*, 384 U.S. 436, 496-97 (1966) (suggesting that suspect taken into custody by "second authority, removed from time and place from his original surroundings, and then adequately advised of his rights" may be questioned).

Still, perhaps the most significant factor weighing against the admissibility of Casey's statements is the fact that agent Marrero did not remind him of his *Miranda* rights immediately prior to the 2:00 p.m. questioning. *See Oquendo-Rivas*, 750 F.3d at 17-18 (assessing whether suspect received "fresh" *Miranda* warnings); *Andrade*, 135 F.3d at 107 (finding "no doubt" suspect retained ability to choose when to speak where police reminded him of warnings immediately prior to second interrogation). Any concerns regarding this fact, however, are assuaged by Casey's invocation of his right to an attorney at some point during the exchange with agent Marrero. This fact, coupled with Casey's decision to remain silent with agent Moulier but to

answer agent Marrero, suggests that Casey was fully aware of his *Miranda* rights and "was in charge of the decision whether and to whom he would speak." *Andrade*, 135 F.3d at 107 (finding rebuff of one agent was not "couched as a refusal to talk with anyone"). In sum, Casey's voluntary waiver of rights upon arrest, subsequent choice to remain silent at Canóvanas, and reminder of his *Miranda* rights at Ceiba all suggest that there is "no reason to doubt" that Casey was fully aware of his right to remain silent and was not unduly pressured into speaking with agent Marrero in the second round of questioning. *Andrade*, 135 F.3d at 107.

Accordingly, Casey's *Mosley* argument lacks merit and his counsel's failure to address it does not amount to deficient performance under the first prong of *Strickland*. *Johnston*, 871 F.3d at 60. It is well settled that "a lawyer's performance does not fall to the level of a Sixth Amendment violation under *Strickland* simply because the lawyer fails to pursue any and all nonfrivolous strategies." *Johnston*, 871 F.3d at 63. "Counsel also is not required to have a tactical reason—above and beyond a reasonable appraisal of a claim's dismal prospects for success—for recommending that a weak claim be dropped altogether." *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009).

### C. *Suppression of Statements in Violation of Prompt Presentment Rule*

Lastly, Casey claims that all his statements made while in police custody should have been suppressed because they were obtained in violation of the prompt presentment rule. **ECF No. 1**, at 21. As such, Casey argues that he received ineffective assistance because counsel failed to bring this argument at his suppression hearing. Like his *Mosley* claim, "the petitioner must

demonstrate that a meritorious claim formed the basis of the proposed motion in order to establish deficient performance." *Johnston v. Mitchell*, 871 F.3d 52, 60 (1st Cir. 2017) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 374 (1993) (O'Connor, J., concurring)).

Under Federal Rule of Criminal Procedure 5(a)(1)(A), "a defendant who has been arrested within the United States is entitled to be brought 'without unnecessary delay before a magistrate judge.'" *United States v. Jacques*, 744 F.3d 804, 813 (1st Cir. 2014) (quoting Fed. R. Crim. P. 5(a)(1)(A)). "The right to speedy presentment not only checks the likelihood of coercive questioning, but also avoids 'all the evil implications of secret interrogation of persons accused of crime.'" *Id.* (quoting *Corley v. United States*, 556 U.S. 303, 307 (2009)).

To protect this right, the Supreme Court promulgated the *McNabb-Mallory* rule, which "stipulates that confessions made during a period of detention that violates the prompt presentment requirement of Rule 5(a) are generally inadmissible in federal courts." *Id.* (citing *Corley*, 556 U.S. at 309). In response to the *McNabb-Mallory* rule, however, Congress enacted 18 U.S.C. § 3501 to create a safe harbor period for certain voluntary confessions. *Corley*, 556 U.S. at 309. Section 3501(c) provides that "a confession . . . shall not be admissible solely because of delay in bringing such person before a magistrate judge or other officer . . . if . . . such confession was made or given by such person within six hours immediately following his arrest or other detention."

Thus, section 3501(c) sets up a two-part inquiry when determining whether statements made to law enforcement violate the right to prompt presentment. *Jacques*, 744 F.3d at 814. "First,

the section creates a safe-harbor for voluntary statements that are received either within six hours of a defendant's detention, or within a longer period deemed reasonable in light of travel or transportation difficulties." *Id.* If the statements fall within that period, and were made voluntarily, they are admissible. *Corley*, 556 U.S. at 322. Where a voluntary statement falls beyond a safe harbor, "section 3501(c) then requires a court to determine whether the delay was nevertheless reasonable or necessary under *McNabb-Mallory*." *Jacques*, 744 F.3d at 814. If the delay was unreasonable and unnecessary under *McNabb-Mallory*, the statements are to be suppressed. *Corley*, 556 U.S. at 322.

"What explains the delay at issue" is the critical question for determining whether a delay in presentment was reasonable or necessary under *McNabb-Mallory*. *United States v. Galindo-Serrano*, 925 F.3d 40, 49 (1st Cir. 2019). "The *McNabb-Mallory* rule was designed to deter police from engaging in lengthy pre-arraignment detentions for the purpose of further interrogating a defendant." *United States v. Garcia-Hernandez*, 569 F.3d 1100, 1106 (9th Cir. 2009). Thus, "delay is unreasonable and unnecessary when it is 'of a nature to give opportunity for the extraction of a confession.'" *Id.* (quoting *Mallory v. United States*, 354 U.S. 449, 455 (1957)). Conversely, a reasonable delay could be attributed to "legitimate administrative concerns" or "any other legitimate law enforcement purpose." *Galindo-Serrano*, 925 F.3d at 49; *see also Jacques*, 744 F.3d at 814 ("delay may be reasonable if caused by administrative concerns, such as unavailability of a magistrate following an arrest, or by a shortage of personnel.").

In *United States v. Boche-Perez*, 755 F.3d 327, 337 (5th Cir. 2014), the Fifth Circuit found that, under *McNabb-Mallory*, "law enforcement personnel are permitted, within reasonable limits, to investigate whether the crime occurred; search and secure a premises; and secure, confiscate, or destroy contraband before taking an arrestee to a magistrate." *Boche-Perez*, 755 F.3d at 337 (collecting cases). In other words, *McNabb-Mallory* does not require law enforcement officers "to drop everything and rush to the magistrate when doing so would imperil public safety." *Id.*

We find that, while Casey's statements fell outside of the six-hour "safe haven" articulated in section 3501(c), the approximate 36-hour delay in his presentment before a magistrate was reasonable and necessary as the entirety of the delay can be attributed to legitimate law enforcement purposes.

First, upon Casey's arrest, Agent Lizardi was still missing and the investigating officers had no indication as to whether he was alive or dead. Casey was brought into custody at PRPD headquarters, waived his *Miranda* rights, and offered to help law enforcement find Lizardi. This initial portion of Casey's detention clearly constitutes a period where agents were investigating whether a crime occurred—a legitimate law enforcement purpose recognized by federal courts. *See Boche-Perez*, 755 F.3d at 337-38. Moreover, Casey's waiver of his rights indicates that any statements he made during this period were voluntary.

During the second portion of Casey's detention following his transfer to Canóvanas, the investigating agents still had not found Lizardi, but were able to question Casey's grandfather

when he arrived at the station. Casey's grandfather consented to a search of Casey's bedroom at

his home. Agents then conducted said search in an effort to find evidence related to Lizardi's

whereabouts and did not continue questioning Casey during the time it took to complete the

search. This period did not constitute an unreasonable delay for two reasons. First, the delay can

be attributed to law enforcement's conversation with Casey's grandfather and subsequent search

of his home, which are both "unrelated to any [effort at] prolonged interrogation." *Boche-Perez*,

755 F.3d at 336-37. Further, courts have recognized that a lawful search of a premises is a

legitimate law enforcement purpose that can reasonably and necessarily delay an arrestee's right

to presentment. *See Boche-Perez*, 755 F.3d at 337 (collecting cases).

Casey was then transferred to the FBI's facility at Ceiba. *See, e.g.*, *United States v. Collins*,

462 F.2d 792, 796 (2d Cir. 1972) (finding delay necessary when moving arrestee through

complexities of combined federal-state system). During this last portion of Casey's pre-

arraignment detention, agent Marrero confronted him with the evidence found in his bedroom

and pleaded with him to reveal Lizardi's whereabouts. Here, the initial portion of this

questioning is the only relevant conduct as Casey's statements made after invoking his right to

an attorney were suppressed prior to trial.

Due to the gravity of the circumstances regarding Agent Lizardi's whereabouts and

unknown physical condition, we find that this brief period of questioning, cut off by Casey's

request for counsel, served the primary purpose of ensuring public safety and not an attempt at

prolonging an interrogation to obtain a confession. *See, e.g.*, *United States v. Carter*, 484 F. App'x.

449, 457-58 (11th Cir. 2012) (finding delay in presentment reasonable where officers attempted, with arrestee's assistance, to locate weapon because purpose was to collect and preserve evidence and eliminate a potential danger to the public); *see also United States v. Sophoan Oung*, 490 F. Supp. 2d 21, 32 (D. Mass. 2007) (noting that "public safety exception" to *Miranda* applies "so long as questioning relates to an *objectively* reasonable need to protect the police . . . from any immediate danger") (emphasis in original).

Because the delay in Casey's presentment was reasonable and necessary for legitimate law enforcement purposes, namely, to locate Agent Lizardi, his prompt presentment claim lacks merit. Accordingly, his ineffective assistance claim fails under the deficiency prong and we need not address the prejudice prong under *Strickland*. *See Johnston*, 871 F.3d at 60.

## IV.    CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, a "district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant." Rules Governing § 2255 Proceedings, Rule 11, 28 U.S.C.A. foll. § 2255. To merit a COA, an applicant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner made no such showing here. Thus, the Court will not issue him a certificate. Therefore, a COA is **DENIED.**

## V.    CONCLUSION

For the reasons stated above, Casey's § 2255 petition is **DENIED**, and his request for an evidentiary hearing is **DENIED.** The case is **DISMISSED WITH PREJUDICE**. He is also **DENIED** a COA. The Clerk of the Court shall enter judgment accordingly.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of March, 2021.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**